IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DAN O'CONNOR, ) | |
| ) | |
| ) | Cause No.: |
| Plaintiff, ) | |
| ) | JURY TRIAL DEMANDED |
| v. ) | |
| ) | |
| CITY OF PINE LAWN, a political ) | |
| subdivision, ) | |
| ) | |
| AND ) | |
| ) | |
| CHIEF RICKEY COLLINS, in his official ) | |
| and individual capacity, ) | |
| ) | |
| AND ) | |
| ) | |
| MAYOR SYLVESTER CALDWELL, in ) | |
| his official and individual capacity, ) | |
| ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

COMES NOW Plaintiff, Dan O'Connor, by and through counsel, and for his Complaint against Defendants City of Pine Lawn, Chief Rickey Collins, and Mayor Sylvester Caldwell, states as follows.

## PARTIES AND JURISDICTION

1. At all times relevant hereto, Plaintiff Dan O'Connor is and was a resident of St. Louis County, State of Missouri.

2. At all times relevant hereto, Defendant City of Pine Lawn (hereinafter "City") is

1

and was a political subdivision of the State of Missouri, which at all times operated the City of Pine Lawn Police Department. Upon information and belief, the City has purchased insurance which provides errors and omissions coverage, therefore providing coverage for such matters as the present cause of action brought by Plaintiff.

3. At all times relevant hereto, Defendant Chief Rickey Collins (hereinafter "Chief") is and was the Chief of Police of the City of Pine Lawn. The Chief is being sued in his individual capacity as well as his official capacity as Chief of Police of the City of Pine Lawn.

4. At all times relevant hereto, the Chief was actively engaged in the management, supervision, and control of the operations, activities, affairs, finances, property, personnel, compensation, and employment conditions of the employees of the City's Police Department, and was at all times relevant hereto acting in the scope and course of his appointed position as Chief of the City's Police Department, and was at all times acting within the scope and course of her employment as Chief.

5. At all times relevant hereto, the Chief had supervisory authority over all employees, including Plaintiff.

6. At all times relevant hereto, Defendant Mayor Sylvester Caldwell (hereinafter "Mayor") is and was the elected Mayor of the City of Pine Lawn. The Mayor is being sued in his individual capacity as well as his official capacity as Mayor of the City of Pine Lawn.

7. At all times relevant hereto, the Mayor was actively engaged in the management, supervision, and control of the operations, activities, affairs, finances, property, personnel, compensation, and employment conditions of the employees of the City's Police Department, and was at all times relevant hereto acting in the scope and course of his elected position as

Mayor of the City of Pine Lawn.

8. Jurisdiction and venue in this court are proper in that the acts and occurrences giving rise to Plaintiff's cause of action occurred in St. Louis County, State of Missouri, and the causes of action alleged herein contain federal causes of action, invoking federal court jurisdiction.

9. At all times relevant hereto, the City was acting through its designated supervisory agents, employees and representatives, and elected officials, including the Chief and Mayor, who were acting within the scope and course of their employment and authority, with full knowledge that Plaintiffs' well established rights were being violated by its employees and agents.

## COMMON FACTUAL ALLEGATIONS

10. Plaintiff does hereby incorporate by reference each and every allegation contained in Paragraphs 1-9, as if fully set forth herein.

11. Plaintiff was hired by the City in March of 2008. Upon being hired, Plaintiff held the rank of Lieutenant, and was at all times during his employment second in command of the Police Department.

12. In early October, 2010, the Chief was involved in an on-duty incident where he shot at a fleeing, unarmed suspect at a checkpoint.

13. Prior to this incident, it had been the past practice of the Chief to contact Plaintiff when any officer discharged his firearm while on duty. However, in this instance, the Chief did not contact Plaintiff to investigate the incident.

14. Shortly after the shooting incident, Plaintiff learned that the Chief had ordered other officers in the Department to take a report of the incident.

15. A total of four (4) reports were written by Department officers, at the direction of the Chief, and turned over to the St. Louis County Prosecuting Attorney's office and the St. Louis County Police Department.

16. Each report ordered by the Chief falsely made it appear that the Chief had probable cause and justification for shooting the unarmed fleeing suspect. The St. Louis County Prosecutor's office then began investigating Chief Collins.

17. The Chief confronted Plaintiff on numerous occasions and accused him of being behind the St. Louis County Police Department's investigation of the incident.

18. After the incident the Chief also told Plaintiff that no one believed his account of the shooting, namely, that the suspect allegedly reached for his waistband while fleeing the scene.

19. The Chief then asked Plaintiff to tell the St. Louis County police department that he had interviewed the Chief and that he believed him when the Chief told him the suspect reached for a gun, and that was the reason the Chief shot at him.

20. Plaintiff refused, stating to the Chief that he would not be a conspirator in an attempted murder.

21. The Chief at that time informed Plaintiff that he had one more chance to provide the afore referenced story to the St. Louis County police department.

22. On or about October 22, 2010, after the above conversation with the Chief,

4

Plaintiff was ordered to take administrative leave, his City issued cell phone was turned off, and he was required to leave his police vehicle at the City's parking lot.

23. On or about November 8, 2010, Plaintiff's attorney, on his behalf, sent correspondence to the City and its attorney, alerting it of the Chief's confrontations with Plaintiff wherein the Chief accused him of providing information to outside criminal justice agencies regarding the Chief's having, without provocation and otherwise illegally, discharged a firearm at an unarmed fleeing suspect, and thereafter seeking to cover up the incident. (See attached Exhibit 1, which is hereby fully incorporated by reference).

24. In this correspondence it was made clear that Plaintiff had in fact provided information, while off duty, to outside law enforcement agencies regarding the Chief's afore referenced criminal activity.

25. After the City received the November 8, 2010 correspondence, the City's retaliation against Plaintiff became even more pervasive, and included the following:

   a. Plaintiff was now required to supervise all municipal court sessions. This order is attached for your reference;

   b. Plaintiff was now required to call and ask the Chief for permission before going to lunch;

   c. Plaintiff was now required to inform the Chief when he was leaving the City, even if only to drop off a police car;

   d. Plaintiff was given an extensive new list of job duties, which appeared to be an attempt to set up him up for failure.

26. After receiving the November 8, 2010 correspondence, the Mayor approached

5

Plaintiff and stated, "I have to lose an old friend, or fire you." Plaintiff replied that the Chief was breaking the law, not him. The Mayor did not respond.

27. On or about December 16, 2010, the Chief again approached Plaintiff and said, "I told you that you have one more chance to tell the cops you believe me."

28. Plaintiff again refused the Chief's request. The Chief then informed Plaintiff that he was through with the Department and would be fired.

29. Four days after the Chief again asked Plaintiff to lie to outside law enforcement, on December 20, 2010, an emergency City Council meeting was held, and Plaintiff was "laid off" indefinitely, allegedly due to budgetary issues in the City.

30. Upon information and belief, since Plaintiff's termination, the City has purchased a suburban for approximately $40,000.00, four (4) brand new Chevrolet Impalas, and a Tahoe for approximately $40,000.00.

31. Upon information and belief, since Plaintiff's termination, the City has hired at least three (3) new employees.

32. At all times relevant hereto, Defendants knew that Plaintiff had spoken to the St. Louis County Police Department and the FBI, regarding not only the Chief having illegally discharged his firearm at an unarmed, fleeing suspect, but also the City and Mayor's cover-up of the Chief's illegal conduct.

33. Plaintiff's reports to outside law enforcement were made on his own time, while he was off-duty.

34. The City's alleged reason for Plaintiff's "lay off" were pretextual, as evidenced by

the Chief and Mayor's threats of termination, the City's purchase of vehicles which well exceed the cost of continuing to employ Plaintiff, and the City's hiring of three (3) new employees.

35. Plaintiff's "lay off" was actually a termination of his employment.

36. Since his termination, the City has failed and refused to pay Plaintiff for his previously earned vacation time, despite verbal assurances from the Chief and Mayor that these monies would be paid to Plaintiff.

37. The City has also failed and refused to pay Plaintiff for time spent responding to a subpoena and testifying in a case which he handled while he was still employed by the City.

## COUNT I
## 42 U.S.C. §1983 RETALIATION IN VIOLATION OF FIRST AMENDMENT AND RETALIATION FOR WHISTLEBLOWING

38. Plaintiff does hereby incorporate by reference each and every allegation contained in Paragraphs 1-37, as if fully set forth herein.

39. At all times relevant hereto, all named Defendants were acting under color of state law and in their official capacities.

40. Plaintiff's statements, as aforementioned, are protected under the First Amendment, as they were made regarding matters of public concern, namely, criminal behavior of the City's Mayor and Chief of Police, which reports were made to Defendants and outside law enforcement agencies.

41. Plaintiff's statements constitute whistle blowing regarding misconduct of a governmental agency, and are protected under the First Amendment.

42. Plaintiff's statements did not disrupt the operation of the City's Police Department.

43. The retaliation Plaintiff suffered at the hands of Defendants was part of a pervasive pattern, practice, policy, and custom of Defendant City.

44. All of the aforementioned personnel actions taken against Plaintiff, including, but not limited to, his termination, constitute adverse employment actions.

45. The retaliation suffered by Plaintiff as aforementioned was the direct and proximate result of the reports he made to outside state and federal law enforcement agencies regarding the Chief and Mayor's criminal misconduct.

46. Plaintiff's reports to outside state and federal agencies, were a substantial or material factor in Defendants' decision in taking the aforementioned adverse employment actions against Plaintiff.

47. The aforementioned adverse employment actions taken by Defendants against Plaintiff, including but not limited to his termination, were initiated intentionally, knowingly, maliciously, and in willful and wanton disregard and reckless indifference to Plaintiff's rights.

48. As a result of Defendants' unlawful acts, as aforesaid, Plaintiff has lost wages and other benefits incident to employment and experienced emotional trauma.

49. Any alleged reasons set forth by Defendants to support its decisions to take the aforementioned adverse employment actions against Plaintiff were pre-textual, in that the real reason behind Defendants decisions were illegal retaliation against Plaintiff for his exercise of protected first amendment speech.

WHEREFORE, Plaintiff respectfully requests the Court to enter judgment in his favor,

above the jurisdictional requirements of this Court, against Defendant City of Pine Lawn, Chief Rickey Collins, and Mayor Sylvester Caldwell as follows:

1. Award Plaintiff actual damages including back-pay and compensatory damages for Defendants' wrongful termination of Plaintiff, including an amount equal to his lost wages and other benefits of employment, with interest, and any medical or other expenses incurred as a result of their loss of these benefits;

2. Award Plaintiff damages for emotional distress;

3. Award Plaintiff punitive damages, up to and including $1,000,000.00, for Defendants' intentional and malicious violation of Plaintiffs' rights;

4. Reinstate Plaintiff to his position with the District, with all benefits restored as if he had never been terminated;

5. Award Plaintiff reasonable attorney's fees and costs incurred herein; and

6. Grant Plaintiff such other and further legal relief as the Court deems just and proper under the facts and circumstances of this case.

## COUNT II
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

50. Plaintiff does hereby incorporate by reference each and every allegation contained in Paragraphs 1-49, as if fully set forth herein.

51. Plaintiff's complaints to the St. Louis County Police Department and FBI were made to the appropriate person of authority.

52. In making these complaints regarding the Chief and Mayor's criminal behavior,

Plaintiff was reporting a violation of the law or clear mandate of public policy, or in the alternative, were reporting what was reasonably believed to be a violation of the law or clear mandate of public policy.

53. As aforementioned, Defendants were at all times aware Plaintiff had made these reports to the St. Louis County police department and FBI.

54. As a result of Plaintiff's complaints as aforementioned, they suffered the aforementioned adverse employment actions, which culminated in Plaintiff's termination.

55. Plaintiff's reports as aforementioned were a contributing factor in Defendants' decision to take the aforementioned adverse employment actions, including Plaintiff's termination.

56. The aforementioned employment actions taken by Defendants against Plaintiff, including but not limited to his termination, were initiated intentionally, knowingly, maliciously, and in willful and wanton disregard and reckless indifference to Plaintiff's rights.

57. As a result of Defendants' unlawful acts, by and through its agents, as aforesaid, Plaintiff has lost wages and other benefits incident to employment and experienced emotional trauma.

WHEREFORE, Plaintiff respectfully requests the Court to enter judgment in his favor, above the jurisdictional requirements of this Court, against Defendant City of Pine Lawn, Chief Rickey Collins, and Mayor Sylvester Caldwell as follows:

1. Award Plaintiff actual damages including back-pay and compensatory damages for Defendants' wrongful termination of Plaintiff, including an amount equal to his

lost wages and other benefits of employment, with interest, and any medical or other expenses incurred as a result of their loss of these benefits;

2. Award Plaintiff damages for emotional distress;

3. Award Plaintiff punitive damages, up to and including $1,000,000.00, for Defendants' intentional and malicious violation of Plaintiffs' rights;

4. Reinstate Plaintiff to his position with the District, with all benefits restored as if he had never been terminated;

5. Award Plaintiff reasonable attorney's fees and costs incurred herein; and

6. Grant Plaintiff such other and further legal relief as the Court deems just and proper under the facts and circumstances of this case.

Respectfully Submitted,

LAW OFFICES OF RICK BARRY, P.C.

By:  /s/ Rick Barry
RICK BARRY, USDC #2572, MBE #25592
Attorney for Plaintiff
1750 South Brentwood Blvd., Suite 295
St. Louis, Missouri 63144
Phone: (314) 918-8900
Fax: (314) 918-8901
rickbarry@rickbarrypc.com

LAW OFFICES OF

# RICK BARRY, P.C.
2726 S. BRENTWOOD BLVD.
ST. LOUIS, MO 63144
314.918.8900
FAX 314.918.8901
www.rickbarrypc.com

RICK BARRY
MEGEN ILENE HOFFMAN

rickbarry@rickbarrypc.com
megens@rickbarrypc.com

November 8, 2010

City of Pine Lawn
Mayor Sylvester Caldwell, City Council Members,
and City Clerk LaTisha Booker
6250 Steve Marre Avenue
Pine Lawn, MO 63121
Sent Via Facsimile 314-261-4412


Donnell Smith
Bank of America Building
4625 Lindell Blvd., Suite 500
St. Louis, Missouri 63108
Sent Via Facsimile 314-361-2525 and
Electronic Mail  donnell.smith@smithlawpractice.com

**EXHIBIT 1**

RE:   Lieutenant Daniel O'Connor

Dear Mayor Sylvester Caldwell , City Council Members, James Brooks, Pelton Jackson, Willie Beal, LaVera Fowler, Myra Perkins, Maggie Bishop, Mary Gray, and NaKisha Ford,
City Clerk LaTisha Booker , and City Attorney Donnell Smith:

   This is written on behalf of my client, Daniel O'Connor, for the purpose of informing you that recently your Chief of Police, Rickey Collins, has twice confronted my client and accused him of providing information to the St. Louis County Police Department, the St. Louis County Prosecuting Attorney's Office and other criminal justice agencies.

   Specifically, Chief Collins confronted my client with the accusation he provided information to outside criminal justice agencies regarding the Chief's having, without provocation and otherwise illegally, discharging a firearm at an unarmed fleeing suspect, in early to mid October 2010, at a DWI/traffic check point, and thereafter seeking to cover up the incident.

   My client indeed did, while off duty, volunteer information he acquired as a private citizen, regarding the aforesaid criminal misconduct of Chief Collins. He believes the

information he has provided to outside law enforcement could lead to Chief Collins being criminally prosecuted.

My client is aware the City Council is meeting tonight and believes Chief Collins already has, or at this meeting will, make his dissatisfaction with him known to you, and request that his employment be terminated.

My client wants you to know the true reason behind any recommendation for termination of his employment, namely that he is being retaliated against because of being a "whistle blower" as to criminal activity on the part of city officials.

Should you doubt his assertion, he asks you to forego taking any disciplinary action against him until you confirm the existence of criminal investigations being conducted by outside agencies focusing on your Chief of Police.

Very Truly Yours,

Rick Barry